UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. _____ |
| ) | |
| CHARLIE JINAN CHEN ) | JURY TRIAL DEMANDED |
| ) | |
| Defendant, ) | |
| and ) | |
| ) | |
| SHUI FOON MOK ) | |
| ) | |
| Relief Defendant. ) | |

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") alleges the following

against Defendant Charlie Jinan Chen ("Chen") and Relief Defendant Shui Foon Mok ("Mok"):

## SUMMARY

1.      This is an insider trading case involving Chen's illegal and extraordinarily profitable

trading over a two-year period in the securities of VistaPrint N.V. ("VistaPrint"), a company

formerly based in Lexington, Massachusetts.  With an inside source of information about

VistaPrint's financial reporting, Chen purchased options ahead of eight VistaPrint quarterly earnings

announcements, each time correctly anticipating whether VistaPrint's stock price would increase or

decrease after those quarterly releases.  Chen reaped illegal gains of more than $900,000 by trading

in his brokerage accounts and the account of his wife, Mok.

## NATURE OF THE PROCEEDING AND RELIEF SOUGHT

2.      The Commission brings this action pursuant to the authority conferred upon it by

Section 20(b) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77t(b)] and Sections

21(d), 21(e), and 21A of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d), 78u(e), and 78u-1]. The Commission seeks a permanent injunction against Chen, enjoining him from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint; disgorgement from Chen and Mok of ill-gotten gains from unlawful insider trading activity beginning in April 2013 as set forth in this Complaint, together with prejudgment interest; and a civil penalty against Chen pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1] and the Insider Trading and Securities Fraud Enforcement Act of 1988. In addition, the Commission seeks any other relief the Court may deem appropriate pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)].

## JURISDICTION AND VENUE

3.     The Court has jurisdiction over this action pursuant to Sections 20(b) and 22(a) of the Securities Act [15 U.S.C. § 77t(b) and 77v(a)] and Sections 21(d), 21(e), 21A, and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), 78u-1, and 78aa].

4.     Venue lies in this Court pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77a] and Sections 21(d), 21A, and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u-1, and 78aa] and 28 U.S.C. § 1391. Chen and Mok both reside in the District of Massachusetts, and the acts, practices, transactions, and courses of business alleged in this Complaint occurred within the district.

5.     Defendant and Relief Defendant, directly and indirectly, have made use of the means and instrumentalities of interstate commerce and of the mails in connection with the acts, practices, and courses of business alleged herein.

## DEFENDANT AND RELIEF DEFENDANT

6.     **Charlie Jinan Chen**, age 48, is a resident of Lexington, Massachusetts. He manages an Asian restaurant in Chelmsford, Massachusetts.

7.      **Shui Foon Mok**, age 49, is Chen's wife and is also a resident of Lexington, Massachusetts.

## RELEVANT ENTITY

8.      **VistaPrint N.V.** is a Dutch issuer with U.S. operations formerly based in Lexington, Massachusetts and now based in Waltham, Massachusetts.  Its securities are registered under Exchange Act Section 12(b) and its common stock is quoted on the NASDAQ Global Select Markets.  On November 17, 2014, the company changed its name to Cimpress N.V. and changed its ticker symbol from "VPRT" to "CMPR."

## STATEMENT OF FACTS

9.      Chen repeatedly engaged in insider trading using information he obtained, directly or indirectly, from an insider at VistaPrint.  Chen reaped illegal gains of more than $900,000 by trading before eight quarterly earnings announcements between July 2012 and July 2014 (the "Relevant Period").

10.     During the Relevant Period, Chen and his wife Mok were close friends with an employee of VistaPrint (the "VistaPrint Insider") and her husband (the "Insider's Husband").  Chen's family and the VistaPrint Insider's family lived in the same town and maintained a close friendship:  both have daughters who attended school together on Sundays, and the families had dined, camped, and vacationed together, including trips to Hawaii in August 2013 and Iceland and Copenhagen in June 2015.  The families also spoke by cell phone or text message multiple times per month.

### A.  The VistaPrint Insider's Role

11.     The VistaPrint Insider was employed at VistaPrint from November 2005 until late February 2015.  From at least 2012 until her departure, the VistaPrint Insider served as a managerial accountant in the company's Financial Planning and Analytics (FPA) group where she helped to

3

compile corporate financial information that VistaPrint disclosed to the public on a quarterly basis (the "Quarterly Earnings Announcements").

12.     During the Relevant Period, the VistaPrint Insider had access to and regularly obtained material nonpublic information in the course of her job duties.  This confidential information—which would ultimately be incorporated in VistaPrint's Quarterly Earnings Announcements to the public—included, among other things, comparisons of actual and forecasted revenues and earnings per share ("EPS"), which serve as an indicator of a company's profitability.

13.     As an employee, the VistaPrint Insider owed VistaPrint a contractual and a fiduciary duty to keep confidential the financial information that she obtained during the course of her employment.

### B.  VistaPrint's Insider Trading Prohibition

14.     During the Relevant Period, VistaPrint maintained internal policies protecting its confidential information (known as the "Insider Trading Policy").  All employees worldwide, including the VistaPrint Insider, had access to the Insider Trading Policy on VistaPrint's internal website.

15.     The Insider Trading Policy, which applied to all employees and their family members (including the VistaPrint Insider and the Insider's Husband), prohibited those individuals from disclosing "Inside Information" to others, and from recommending or inducing another person to trade VistaPrint securities while in possession of Inside Information.

16.     The Insider Trading Policy provided examples of Inside Information, including (a) financial information about VistaPrint and the performance of its business prior to the public disclosure of such information and (b) VistaPrint's financial projections prior to the public disclosure.

17.     During the Relevant Period, VistaPrint also provided its employees with a "Code of Business Conduct and Ethics" ("Code").  The Code specified that VistaPrint employees who have "material non-public information about the Company … are prohibited by law and Company policy from … communicating such information to others who might trade on the basis of that information."  The Code also referenced VistaPrint's Insider Trading Policy, available on the company's intranet.  On November 14, 2005, the VistaPrint Insider certified that she received and read the Code, understood it, and would continue to comply with its terms.

18.     In advance of each Quarterly Earnings Announcement during the Relevant Period, VistaPrint instituted a "blackout period" during which employees were prohibited from trading the company's securities.  VistaPrint's legal department sent an email to all employees worldwide, including the VistaPrint Insider, notifying them of the "blackout period" and providing a hyperlink to VistaPrint's Insider Trading Policy to remind the employees of their obligations and restrictions under the policy.

## C. Chen's Trading in VistaPrint

19.     Chen's trading pattern in VistaPrint securities consisted of a series of high-conviction bets that would have been extremely risky had Chen not possessed inside information:  (i) he repeatedly traded options (and sometimes stock) during the month after VistaPrint's fiscal quarter ended, prior to the company's Quarterly Earnings Announcements, (ii) he usually purchased options that were out of the money,[1] and typically bought options that expired approximately three weeks after the Quarterly Earnings Announcements, putting his entire options investment at risk if he were

---

[1]     An option is, in substance, a contract that gives the option's owner the right to buy or sell 100 shares of the underlying stock at a set price per share, known as the option's "strike price."  Options to buy shares are known as "call" options.  Options to sell shares are known as "put" options.  When, for example, a call option's underlying stock is trading at a price above the option's strike price, the option is considered to be "in the money" because one can exercise the call option and buy the stock at the strike price and then sell the stock into the market for a profit.  When a call option's strike price is greater than the market price, the option is "out of the money" because the exercise of the option and sale of the stock into the market would result in a trading loss.

to bet incorrectly, and (iii) he traded in one direction only—that is, he purchased either put or call

options, never both.  The following chart summarizes his trading activity and results:

| Fiscal Quarter | Securities Traded | Chen's Cost | VPRT Closing Price on Day of Announcement | VPRT Closing Price on Day After Announcement | **Did Chen bet in correct direction?** | Chen's Gain (loss) |
|---|---|---|---|---|---|---|
| Q4 2012 | Call Options | $23,586 | $32.29 | $33.23 | **Yes** | $4,317 |
| Q1 2013 | Put Options | $20,597 | $34.54 | $29.98 | **Yes** | $25,306 |
| Q2 2013 | Put Options | $54,728 | $35.85 | $33.97 | **Yes** | $29,632 |
| Q3 2013 | Call Options | $78,485 | $40.88 | $42.39 | **Yes** | $53,018 |
| Q1 2014 | Put Options | $74,987 | $54.76 | $53.33 | **Yes** | ($2,275) |
| Q2 2014 | Call Options | $80,399 | $46.95 | $49.38 | **Yes** | ($76,872) |
| Q3 2014 | Put Options & Short Sales | $118,086 (options) $56,489 (short sale cover) | $53.42 | $39.47 | **Yes** | $391,982 |
| Q4 2014 | Call Options & Stock | $149,840 (options) $113,324 (stock) | $37.73 | $49.26 | **Yes** | $447,827 |

20.     Based on material nonpublic information that the VistaPrint Insider and/or the

Insider's Husband tipped to Chen, Chen placed illegal trades in VistaPrint securities that were

consistently and exceptionally successful.  Each of Chen's trades during the Relevant Period

accurately anticipated whether VistaPrint's stock price would increase or decrease after a Quarterly

Earnings Announcement.  Chen gained approximately $952,082 from his trading in six of the eight

quarters.  In the two quarters that he did not profit (the first and second quarters of fiscal year 2014),

Chen nonetheless correctly predicted whether VistaPrint's stock price would increase or decrease

after the public announcement; the amount of price movement in those two instances was

insufficient to make his bets profitable.

**Trading in Advance of VistaPrint's Q3 2013 Earnings Release**

21.     VistaPrint's third quarter of fiscal year 2013 ran from January 1, 2013 to March 31,

2013.  In the weeks leading up to the close of that quarter and in the weeks that followed, the

VistaPrint Insider was involved in calculating VistaPrint's financial metrics, and had access to and

regularly obtained financial information that would ultimately be incorporated in VistaPrint's Q3 2013 Quarterly Earnings Announcement, including comparisons of VistaPrint's actual and forecasted revenues and EPS.

22.     The VistaPrint Insider received an email from the VistaPrint legal department on or about March 12, 2013 stating that the quarterly securities trading blackout period would begin after the close of trading on March 15, 2013 and would end before trading opened on April 30, 2013 (five days after the Quarterly Earnings Announcement scheduled for April 25, 2013).

23.     Telephone records evidence calls between Chen's family and the VistaPrint Insider's family on multiple days in April 2013, including a call between Chen and the VistaPrint Insider and/or the Insider's Husband on April 7, 2013.

24.     Between April 8 and 15, 2013, Chen purchased 345 VistaPrint call options in his and Mok's accounts.  All of the call options were out of the money (the strike price was higher than the market closing price).  The following chart illustrates Chen's trading activity prior to VistaPrint's Q3 2013 Quarterly Earnings Announcement:

| Date | Account | Trade | Security | Quantity | Total Cost |
|---|---|---|---|---|---|
| 4/8/2013 | Chen's Brokerage | Buy | Call Options | 50 | $9,048 |
| 4/15/2013 | Chen's Brokerage | Buy | Call Options | 220 | $52,859 |
| 4/15/2013 | Chen's Roth IRA | Buy | Call Options | 50 | $11,048 |
| 4/15/2013 | Mok's Roth IRA | Buy | Call Options | 25 | $5,529 |

25.     On April 25, 2013, VistaPrint announced positive Q3 2013 financial results. VistaPrint reported Non-GAAP EPS of $0.48 per share, beating analysts' consensus estimate of $0.36.[2]  On April 26, 2013, after the Quarterly Earnings Announcement, VistaPrint's stock price increased $1.51 per share (or 3.69%), closing at $42.39.

---

[2]     "GAAP," or Generally Accepted Accounting Principles, is a collection of commonly-followed accounting rules and standards for financial reporting. Calculating Non-GAAP EPS is a common method used to measure a company's financial performance.  A consensus estimate is a figure based on the combined estimates of various analysts covering a public company.

26.     Chen sold all 345 option contracts between April 26 and April 30, 2013 for a total profit of approximately $53,018.

**<u>Trading in Advance of VistaPrint's Q1 2014 Earnings Release</u>**

27.     VistaPrint's first quarter of fiscal year 2014 ran from July 1, 2013 to September 30, 2013.  In the weeks leading up to the close of that quarter and in the weeks that followed, the VistaPrint Insider was involved in calculating VistaPrint's financial metrics, and had access to and regularly obtained financial information that would ultimately be incorporated in VistaPrint's Q1 2014 Quarterly Earnings Announcement, including comparisons of VistaPrint's actual and forecasted revenues and EPS.

28.     The VistaPrint Insider received an email from the VistaPrint legal department on September 11, 2013 stating that the quarterly securities trading blackout period would begin after the close of trading on September 16, 2013 and would end before trading opened on November 1, 2013 (three days after the Quarterly Earnings Announcement scheduled for October 29, 2013).

29.     Telephone records evidence calls and text messages between Chen's family and the VistaPrint Insider's family on multiple days in October 2013, including calls on October 5, 6, and 21, 2013.

30.     Between October 14 and 21, 2013, Chen purchased 280 VistaPrint put options in his and Mok's accounts.  Approximately 75% of the put options were out of the money (the strike price was lower than the market price).  The following chart illustrates Chen's trading activity prior to VistaPrint's Q1 2014 Quarterly Earnings Announcement:

| Date | Account | Trade | Security | Quantity | Total Cost |
|------|---------|-------|----------|----------|------------|
| 10/14/2013 | Chen's Brokerage | Buy | Put Options | 50 | $16,049 |
| 10/16/2013 | Chen's Brokerage | Buy | Put Options | 80 | $20,132 |
| 10/16/2013 | Chen's Roth IRA | Buy | Put Options | 50 | $12,799 |
| 10/16/2013 | Mok's Roth IRA | Buy | Put Options | 30 | $7,683 |
| 10/18/2013 | Chen's Brokerage | Buy | Put Options | 50 | $12,799 |

| 10/21/2013 | Chen's Brokerage | Buy | Put Options | 20 | $5,525 |
|---|---|---|---|---|---|

31.     On October 29, 2013, VistaPrint announced Q1 2014 financial results. VistaPrint reported Non-GAAP EPS of $0.32 per share, falling short of analysts' consensus estimate of $0.38. On October 30, 2013, after the Quarterly Earnings Announcement, VistaPrint's stock price decreased $1.43 per share (or 2.61%), closing at $53.33.

32.     Chen sold all 280 option contracts on October 29 and 30, 2013 for a loss of approximately $2,275.

33.     Despite the loss, Chen nonetheless bet the correct direction—that is, he purchased put options anticipating a decrease in VistaPrint's stock price, and that is exactly what happened.  The stock price just did not decrease enough to make his bet profitable.

### Trading in Advance of VistaPrint's Q2 2014 Earnings Release

34.     VistaPrint's second quarter of fiscal year 2014 ran from October 1, 2013 to December 31, 2013.  In the weeks leading up to the close of that quarter and in the weeks that followed, the VistaPrint Insider was involved in calculating VistaPrint's financial metrics, and had access to and regularly obtained financial information that would ultimately be incorporated in VistaPrint's Q2 2014 Quarterly Earnings Announcement, including comparisons of VistaPrint's actual and forecasted revenues and EPS.

35.     The VistaPrint Insider received an email from the VistaPrint legal department on December 12, 2013 stating that the quarterly securities trading blackout period would begin after the close of trading on December 17, 2013 and would end before trading opened on February 3, 2014 (five days after the Quarterly Earnings Announcement scheduled for January 29, 2014).

36.     Telephone records evidence calls between Chen's family and the VistaPrint Insider's family on multiple days in January 2014, including calls between Chen and the VistaPrint Insider and/or the Insider's Husband on January 7, 19, and 23, 2014.

37.     Between January 14 and 29, 2014, Chen purchased 535 call options in his and Mok's accounts.  All of the call options were out of the money (the strike price was higher than the market closing price).  The following chart illustrates Chen's trading activity prior to VistaPrint's Q2 2014 Quarterly Earnings Announcement:

| Date | Account | Trade | Security | Quantity | Total Cost |
|------|---------|-------|----------|----------|------------|
| 1/14/2014 | Chen's Brokerage | Buy | Call Options | 50 | $14,299 |
| 1/16/2014 | Chen's Brokerage | Buy | Call Options | 20 | $5,025 |
| 1/21/2014 | Chen's Brokerage | Buy | Call Options | 80 | $14,782 |
| 1/21/2014 | Chen's Roth IRA | Buy | Call Options | 70 | $11,874 |
| 1/21/2014 | Mok's Roth IRA | Buy | Call Options | 35 | $5,947 |
| 1/27/2014 | Chen's Brokerage | Buy | Call Options | 50 | $6,959 |
| 1/27/2014 | Chen's Roth IRA | Buy | Call Options | 30 | $4,083 |
| 1/27/2014 | Moth's Roth IRA | Buy | Call Options | 15 | $2,046 |
| 1/29/2014 | Chen's Brokerage | Buy | Call Options | 110 | $9,305 |
| 1/29/2014 | Chen's Roth IRA | Buy | Call Options | 50 | $4,049 |
| 1/29/2014 | Mok's Roth IRA | Buy | Call Options | 25 | $2,029 |

38.     On January 29, 2014, VistaPrint announced positive Q2 2014 financial results. VistaPrint reported Non-GAAP EPS of $1.50 per share, beating analysts' consensus estimate of $1.23.  On January 30, 2014, after the Quarterly Earnings Announcement, VistaPrint's stock price increased $2.43 per share (or 5.18%), closing at $49.38.

39.     Chen sold 250 option contracts on February 12 and 18, 2014, and he let the remaining contracts expire, thereby incurring a loss of approximately $76,872.

40.     Despite the loss, Chen nonetheless bet the correct direction—that is, he purchased call options anticipating an increase in VistaPrint's stock price, and that is exactly what happened.  The stock price just did not increase enough to make his bet profitable.

## **Trading in Advance of VistaPrint's Q3 2014 Earnings Release**

41.     VistaPrint's third quarter of fiscal year 2014 ran from January 1, 2014 to March 31, 2014.  In the weeks leading up to the close of that quarter and in the weeks that followed, the VistaPrint Insider was involved in calculating VistaPrint's financial metrics, and had access to and regularly obtained financial information that would ultimately be incorporated in VistaPrint's Q3 2014 Quarterly Earnings Announcement, including comparisons of VistaPrint's actual and forecasted revenues and EPS.

42.     The VistaPrint Insider received an email from the VistaPrint legal department on March 12, 2014 stating that the quarterly securities trading blackout period would begin after the close of trading on March 17, 2014 and would end before trading opened on May 2, 2014 (three days after the Quarterly Earnings Announcement scheduled for April 29, 2014).

43.     Telephone records evidence calls between Chen's family and the VistaPrint Insider's family on multiple days in March and April 2014, including calls between Chen and the VistaPrint Insider and/or the Insider's Husband on March 15, 23, 26, and 30, 2014 and April 6 and 13, 2014.

44.     Between March 26 and April 29, 2014, Chen purchased approximately 700 VistaPrint put options in his and Mok's accounts.  All of the put options were out of the money (the strike price was lower than the market closing price).  During this period, Chen also sold VistaPrint shares short. Short selling is the sale of a security that the seller has borrowed.  Short selling is motivated by the belief that a security's price will decline, enabling it to be bought back at a lower price after the sale to make a profit.

45.     The following chart illustrates Chen's trading activity prior to VistaPrint's Q3 2014 Quarterly Earnings Announcement:

| Date | Account | Trade | Security | Quantity | Total Cost (Proceeds) |
|------|---------|-------|----------|----------|----------------------|
| 3/26/2014 | Chen's Brokerage | Buy | Put Options | 50 | $12,549 |
| 3/31/2014 | Chen's Brokerage | Buy | Put Options | 80 | $15,782 |
| 4/1/2014 | Chen's Roth IRA | Buy | Put Options | 50 | $8,299 |
| 4/1/2014 | Mok's Roth IRA | Buy | Put Options | 25 | $4,154 |
| 4/7/2014 | Chen's Roth IRA | Sell | Put Options | 50 | $9,451 (proceeds) |
| 4/7/2014 | Mok's Roth IRA | Sell | Put Options | 25 | $4,721 (proceeds) |
| 4/9/2014 | Chen's Roth IRA | Buy | Put Options | 50 | $7,549 |
| 4/9/2014 | Mok's Roth IRA | Buy | Put Options | 25 | $4,029 |
| 4/17/2014 | Chen's Brokerage | Buy | Put Options | 15 | $2,272 |
| 4/22/2014 | Chen's Brokerage | Buy | Put Options | 105 | $15,026 |
| 4/22/2014 | Chen's Roth IRA | Buy | Put Options | 50 | $6,549 |
| 4/22/2014 | Mok's Roth IRA | Buy | Put Options | 25 | $3,279 |
| 4/22/2014 | Chen's Brokerage | Short Sell | Equities | 1000 | $50,991 (proceeds) |
| 4/23/2014 | Chen's Brokerage | Buy | Put Options | 50 | $6,799 |
| 4/24/2014 | Chen's Roth IRA | Buy | Put Options | 50 | $7,049 |
| 4/24/2014 | Mok's Roth IRA | Buy | Put Options | 25 | $3,529 |
| 4/28/2014 | Chen's Brokerage | Buy | Put Options | 50 | $7,509 |
| 4/28/2014 | Chen's Roth IRA | Buy | Put Options | 50 | $6,859 |
| 4/28/2014 | Mok's Roth IRA | Buy | Put Options | 30 | $4,093 |
| 4/29/2014 | Chen's Brokerage | Short Sell | Equities | 450 | $22,984 (proceeds) |
| 4/29/2014 | Mok's Roth IRA | Buy | Put Options | 25 | $2,464 |
| 4/29/2014 | Chen's Roth IRA | Buy | Put Options | 3 | $297 |

46.     The aggressive options position that Chen amassed in advance of VistaPrint's Q3 2014 Quarterly Earnings Announcement reflected his possession of inside information that the company was about to announce financial results that fell significantly short of market expectations. Chen's purchases of VistaPrint put options represented approximately 99.8% of the value of Chen's individual brokerage portfolio, 44.2% of his Roth IRA portfolio, and 44.6% of Mok's Roth IRA portfolio at that time.  If Chen had not possessed inside information, this would have been an extremely risky bet putting him in great danger of losing almost all value in his personal brokerage account and a significant percentage of the total value in both his and his wife's retirement (Roth IRA) accounts.

47.     On April 29, 2014, VistaPrint announced negative Q3 2014 financial results. VistaPrint reported Non-GAAP EPS of $0.24 per share, falling dramatically short of analysts'

consensus estimate of $0.59.  On April 30, 2014, after the Quarterly Earnings Announcement, VistaPrint's stock price plummeted $13.95 per share (or 26.11%), closing at $39.47.

48.     Chen sold his remaining option contracts on April 30, 2014 and covered his short sales on April 30 and May 1, 2014.  Including the options sold on April 7, 2014, Chen's total profit was approximately $391,982.

### Trading in Advance of VistaPrint's Q4 2014 Earnings Release

49.     VistaPrint's fourth quarter of fiscal year 2014 ran from April 1, 2014 to June 30, 2014.  In the weeks leading up to the close of that quarter and in the weeks that followed, the VistaPrint Insider was involved in calculating VistaPrint's financial metrics, and had access to and regularly obtained financial information that would ultimately be incorporated in VistaPrint's Q4 2014 Quarterly Earnings Announcement, including comparisons of VistaPrint's actual and forecasted revenues and EPS.

50.      The VistaPrint Insider received an email from the VistaPrint legal department on June 11, 2014 stating that the quarterly securities trading blackout period would begin after the close of trading on June 16, 2014 and would end before trading opened on August 4, 2014 (five days after the Quarterly Earnings Announcement scheduled for July 30, 2014).

51.     Telephone records evidence calls or text messaging between Chen's family and the VistaPrint Insider's family on multiple days in July 2014, including calls between Chen and the VistaPrint Insider and/or the Insider's Husband on July 4, 5, 8, 10, 18, and 20, 2014.

52.     Between July 10 and 30, 2014, Chen purchased approximately 850 VistaPrint call options in his and Mok's accounts.  Slightly less than half of the call options were out of the money. During this period, Chen also purchased VistaPrint stock.

53.     The following chart illustrates Chen's trading activity prior to VistaPrint's Q4 2014

Quarterly Earnings Announcement:

| Date | Account | Trade | Security | Quantity | Total Cost (Proceeds) |
|------|---------|-------|----------|----------|------------------------|
| 7/10/2014 | Chen's Brokerage | Buy | Call Options | 20 | $2,625 |
| 7/16/2014 | Chen's Brokerage | Buy | Call Options | 50 | $11,049 |
| 7/16/2014 | Chen's Roth IRA | Buy | Call Options | 20 | $2,372 |
| 7/16/2014 | Mok's Roth IRA | Buy | Call Options | 10 | $1,168 |
| 7/17/2014 | Chen's Roth IRA | Buy | Call Options | 30 | $3,033 |
| 7/17/2014 | Mok's Roth IRA | Buy | Call Options | 15 | $1,522 |
| 7/18/2014 | Chen's Brokerage | Buy | Equities | 1000 | $37,308 |
| 7/22/2014 | Chen's Brokerage | Sell | Equities | 1000 | $38,491 (proceeds) |
| 7/30/2014 | Chen's Brokerage | Buy | Call Options | 330 | $60,575 |
| 7/30/2014 | Chen's Roth IRA | Buy | Call Options | 250 | $44,983 |
| 7/30/2014 | Mok's Roth IRA | Buy | Call Options | 125 | $22,512 |
| 7/30/2014 | Chen's Brokerage | Buy | Equities | 2000 | $76,016 |

54.     On July 30, 2014, VistaPrint announced positive Q4 and fiscal year end 2014

financial results. VistaPrint reported Non-GAAP EPS of $0.75 per share, beating analysts'

consensus estimate of $0.53.  On July 31, 2014, after the Quarterly Earnings Announcement,

VistaPrint's stock price increased $11.53 per share (or 30.55%), closing at $49.26.

55.     Chen sold his option contracts and his remaining stock on July 31, 2014.  Including

the stock sold on July 22, 2014, Chen's total profit was approximately $447,827.

**D.  <u>Chen's False Representations to the FBI</u>**

56.     On March 30, 2016, Chen was approached by agents of the Federal Bureau of

Investigation ("FBI") and questioned about his trading in VistaPrint securities.  Notwithstanding his

close relationship with the VistaPrint Insider and the Insider's Husband, Chen claimed that he did

not know anyone who worked at VistaPrint.  When the agents specifically identified the VistaPrint

Insider and the Insider's Husband by name and asked if Chen knew them, Chen falsely downplayed

his relationship with them, stating that he knew the Insider's Husband from his daughter's school

and some social settings, but that they were not close friends and they did not talk very often.

57.     In May 2016, Chen was subpoenaed to testify in the Commission's investigation. During his testimony, Chen asserted his Fifth Amendment privilege against self-incrimination as to each and every question asked of him, including all questions concerning (a) his knowledge that the VistaPrint Insider worked as an accountant at VistaPrint, (b) the close relationship between his family and the VistaPrint Insider's family, (c) his receiving tips of material, non-public information about VistaPrint; and (d) his trading in VistaPrint securities on the basis of those tips.

## COUNT I

### Violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder
(Chen)

58.     The Commission realleges and incorporates by reference the allegations in paragraphs 1 through 57 above.

59.     At the time that Chen traded VistaPrint securities as set forth above, he was in possession of material, nonpublic information about VistaPrint.  Chen (a) knew, was reckless in not knowing, should have known, or consciously avoided knowing that the information was disclosed to him in breach of a duty or a relationship of trust and confidence and that the tipper received a personal benefit; and (b) while in knowing possession or while recklessly not knowing he was in possession of material nonpublic information, used the information by trading for his and his wife's benefit.

60.     By engaging in the conduct described above, defendant Chen, in connection with the purchase or sale of securities, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any  national securities exchange, directly or indirectly: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary to make the statements made, in the light of the

circumstances under which they were made, not misleading; or (c) engaged in acts, practices, or

courses of business which operated or would have operated as a fraud or deceit upon persons.

61.     Chen acted with scienter.

62.     By engaging in the conduct described above, defendant Chen, directly or indirectly,

violated and, unless enjoined, will again violate, Section 10(b) of the Exchange Act [15 U.S.C.

§ 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

## COUNT II

### Violation of Section 17(a) of the Securities Act
(Chen with respect to short selling in April 2014)

63.     The Commission realleges and incorporates by reference the allegations in paragraphs

1 through 57 above.

64.     At the time that Chen traded VistaPrint securities as set forth above, he was in

possession of material, nonpublic information about VistaPrint.  Chen (a) knew, was reckless in not

knowing, should have known, or consciously avoided knowing that the information was disclosed to

him in breach of a duty or a relationship of trust and confidence and that the tipper received a

personal benefit; and (b) while in knowing possession or while recklessly not knowing he was in

possession of material nonpublic information, used the information by trading for his and his wife's

benefit.

65.     By engaging in the conduct described above, defendant Chen, in the offer or sale of

securities, by the use of any means or instruments of transportation or communication in interstate

commerce or by use of the mails, directly or indirectly (a) employed devices, schemes, or artifices to

defraud; (b) obtained money or property by means of an untrue statements of material facts or has

omitted to state material facts necessary in order to make statements made, in light of the

circumstances under which they were made, not misleading; and/or (c) engaged in transactions, practices, or courses of business which operated as a fraud or deceit upon the purchasers of securities.

66.     Chen acted with scienter.

67.     By engaging in the conduct described above, defendant Chen, directly or indirectly, violated and, unless enjoined, will again violate Section 17(a) of the Securities Act [15 U.S.C. §77q(a)].

## COUNT III

### Unjust Enrichment
(Mok)

68.     The Commission realleges and incorporates by reference the allegations in paragraphs 1 through 57 above.

69.     Mok has no legitimate interest in, or right to, the funds she received directly or indirectly from Chen's trading VistaPrint securities in her brokerage account, which represent proceeds of the fraud alleged above.

70.     As a result, Mok is liable as a relief defendant for unjust enrichment and should be required to return her ill-gotten gains, with prejudgment interest.

## RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

A.      Permanently restraining and enjoining Chen from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder;

B.      Ordering Chen to disgorge, with pre-judgment interest, all ill-gotten gains received as a result of the conduct alleged in this complaint for trading in VistaPrint securities during the period April 2013 through July 2014, including all illicit trading profits, in his brokerage accounts; and further ordering Chen to disgorge on a joint and several basis with Mok, with prejudgment interest, all ill-gotten gains received as a result of the conduct alleged in this complaint for trading in VistaPrint securities during the period April 2013 through July 2014 in Mok's brokerage account;

C.      Ordering Mok to disgorge on a joint and several basis with Chen, with prejudgment interest, all ill-gotten gains received as a result of the conduct alleged in this complaint for trading in VistaPrint securities during the period April 2013 through July 2014, including all illicit trading profits, in her brokerage account;

D.      Ordering Chen to pay a civil monetary penalty pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1] and the Insider Trading and Securities Fraud Enforcement Act of 1988;

E.      Retaining jurisdiction over this action to implement and carry out the terms of all orders and decrees that may be entered; and

F.      Granting such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

The Commission hereby demands a trial by jury on all claims so triable.

Respectfully submitted,

_David London_

_____
David H. London (Mass. Bar. No. 638289)
Martin F. Healey (Mass. Bar. No. 227550)
*Counsel for Plaintiff*
U.S. SECURITIES AND EXCHANGE COMMISSION
33 Arch Street, 24th Floor
Boston, MA 02110
(617) 573-8997 (London direct)
(617) 573-4590 (Facsimile)
LondonD@sec.gov  (London email)

Of Counsel:

    Joseph G. Sansone
    Chief, Market Abuse Unit
    U.S. SECURITIES AND EXCHANGE COMMISSION
    Brookfield Place
    200 Vesey Street, Suite 400
    New York, NY 10281

    Michele T. Perillo (Mass. Bar. No. 629343)
    Assistant Director, Market Abuse Unit
    U.S. SECURITIES AND EXCHANGE COMMISSION
    33 Arch Street, 24th Floor
    Boston, MA 02110

Dated:  April 5, 2018